## JOHN P. GIBSON *v.* P. P. VAIL.

*Assumpsit. Evidence. Fraud. Duty of Vendor and Vendee when Property is Sold on Trial. Presumption. Referee's Report.*

1. *Indebitatus* assumpsit lies to recover the price of an article delivered on a written order.
2. In such case the writing is admissible evidence.
3. Ordinarily, when property is sold *on trial*, the vendee must notify the vendor of the failure in a reasonable time; but otherwise, when the vendor *agrees to examine the working of the article and learn the result himself.**
4. It is a *species of fraud* to sell an article *on trial*, for a *particular purpose*, when the *vendor knows*, or ought to have known, from his certain knowledge of the *facilities of the vendee* in using it, that it must *necessarily result in failure.*
5. The court will not presume error, as to the admission of evidence of conversations had at the time the contract was written, when it is not detailed, or given in the report of the referees.
6. Conversations of the parties, *after* the written contract is made, about the setting up, and manner of using milk pans, sold *on trial*, are admissible.
7. Evidence of the successful working of other pans similar to these in question is not admissible, when it could not affect the result of the case.

THIS case was heard at the March Term, 1880, upon the report of a referee and exceptions thereto ; the court rendered judgment thereon for defendant to recover her costs. VEAZEY, J., presiding. The referee reported :

I find that the plaintiff is a farmer, residing in Mount Holly, in the county of Rutland, and is also engaged in selling milk pans, known to the trade and among farmers as the " Gilt Edge Milk Pan." In conducting the business of selling these pans, the wife of the plaintiff travels about the country taking orders and delivering and putting in operation the pans in which the plaintiff is dealing ; that on the 31st day of May, A. D. 1878, Mrs. Harriet E. Gibson, the wife of the plaintiff, called upon the defendant, who is a widow residing and carrying on a dairy farm in the

---

* * That where the property is destroyed during the time the vendee has it "on trial," the vendor cannot recover, see *Elphick* v. *Barnes*, Am. L. Reg., April, 1881, 240, and note; *Hunt* v. *Wyman*, 100 Mass. 198 ; but it seems, that he can recover, if the injury is occasioned by the act of the vendee. *Moss* v. *Sweet*, 16 Q, B., N. S. 495. See Story on Sales, with notes by Bennett, s. 250 ; Benjamin on Sales, 2d ed., 547.—REP.

town of Orwell, Addison County, and solicited the defendant to take some of these pans on trial, and procured the defendant to sign and deliver to her an order. (The order is given in the opinion of the court.) . . . I further find that the defendant had no running water at or near her house, no ice house and no milk house, and these facts were made known to the wife of the plaintiff at the time the order was taken. That after the order was signed and delivered the defendant expressed a desire to have the pans delivered sooner than the 20th day of June, and that on the 6th day of June, 1878, the said wife of the plaintiff and one Kelley, who travelled about with Mrs. Gibson, and assisted her in making sales, and who was with her when said order was given, again went to the residence of the defendant with the pans. Said Kelley and Mrs. Gibson examined the house and premises of the defendant, and decided to put said pans in operation in the woodshed, attached to, or near the defendant's dwelling house, and said Kelley, aided by a son of the defendant, built platforms, partitions and frames, and set said pans up in said woodshed for trial under the terms of said order ; and said Kelley and Mrs. Gibson gave to the defendant full directions as to their use and operation ; that said woodshed was in a dirty condition, had only a loose floor of rough boards over it, and a rough board partition separating it from the outside of the building, and it was fully exposed to the heat of the sun. At some time while the wife of the plaintiff was at the house of the defendant, the defendant expressed a purpose to build a milk house, if said pans should prove satisfactory to her on the trial. . . . I further find, that soon after the pans were put in, the weather became quite warm, and the supply of water in the well and cistern of the defendant, which was all the water supply she had, nearly failed, and that the wind drove large quantities of dirt through the partition and floors of said shed, into the milk set in said pans ; and that with the best care the defendant could give the pans with the facilities she had at her command, in the place in which they were located, the trial was a failure, and that after continuing their use for fourteen days, the defendant abandoned the use of them and left them standing in the shed awaiting the coming of Mrs. Gibson to take them away, and they yet remain in said shed where they were placed, and have not been used for any purpose since they were so abandoned, fourteen days after they were set up by Mrs. Gibson and Mr. Kelley. . . . The plaintiff objected to the evidence of the defendant, as to the pans being located and set up by Kelley and Mrs. Gibson, and as to all conversation that took place between them and the defendant

when the order was given and when the pans were set, and between Kelley and the defendant when he was there in August, which I admitted, subject to the decision of the court on its admissibility.

The plaintiff called as a witness Henry D. Cutts, and showed by him that he was a farmer, residing in the same town as the defendant and some eight miles from her residence, and that he was using the " Gilt Edge Pan " in his dairy; and then the plaintiff asked him the following questions:

" State whether in your judgment the Gilt-Edge Pans will make more and better butter with proper care and save more than one-half the labor, than small pans?" This question was objected to and excluded. The plaintiff then called Mr. Kelley and asked him the question:

" Whether you set Mr. Cutts' pans and also Mrs. Vail's pans, and if so, whether they are similar in every respect?" This question was objected to and excluded.

*Ques.*—" When Mrs. Vail's pans were set were they in as good condition as Mr. Cutts' pans, and Mr. Gorham's pans?" This question was objected to and excluded.

*Ques.*—" Whether, when you obtained this order of Mrs. Vail, you referred her to Mr. Cutts' pans as a sample?" Objected to and excluded. The witness testified that in the directions he gave as to the use of the pans, he directed that the milk be kept at a temperature of sixty-two degrees. The plaintiff then asked the witness the following question:

" If the milk had been kept at sixty-two degrees would it have fulfilled that warranty?" Objected to and excluded. The plaintiff also called David Brown as a witness, and showed by him that he was a neighbor of the defendant, and used the same kind of pans, and asked him the question: " Whether the premises where your pans are located are similar to the place where these are located as to exposure to heat?" Objected to and excluded.

*Ques.*—" Whether in your judgment with proper care these pans as located would fulfil the warranty, the milk being kept at sixty-two degrees temperature?" Objected to and excluded.

At the request of the attorneys for the plaintiff I further report, that John W. Kelley, a witness for the plaintiff referred to in my report, testified that for about four years he had been engaged in selling the Gilt-Edge Milk Pans and in experimenting with them, and that in his judgment with the water he found at the defendant's premises when he set the pans, he had no doubt but that milk set in them could have been kept at a temperature of sixty two degrees—which evidence was admitted, and in making my finding of fact I gave it such consideration as I thought it entitled to in connection with the other testimony in the case.

Gibson *v*. Vail.

*Redington & Butler*, for plaintiff.

A person "may sue in his own name upon a contract written or verbal, made by his agent with a third party, although the agent contract in his own name and the other party has no knowledge of the agency." The order was properly admitted. *Cummings* v. *Blaisdell*, 43 Vt. 382 ; *Day* v. *Riley*, 16 Vt. 48 ; *Squiers* v. *Barber*, 37 Vt. 558 ; *Lapham* v. *Green*, 9 Vt. 407 ; 1 Chit. Plead. 130. The defendant is bound by her contract to use "proper care" and diligence in setting and using the pans. *Daggett et al.* v. *Johnson*, 49 Vt. 347.

The law presumes that all the talk in the negotiation deemed essential, is included in the written consummation of the contract. *Daggett et al.* v. *Johnson, ante; Fitch* v. *Woodruff, &c. Iron Works*, 29 Conn. ; *Linsley* v. *Lovely*, 26 Vt. 123–130 ; *Tilton Safe Co.* v. *Tisdale*, 48 Vt. 83 ; *Brandon M'fg. Co.* v. *Morse*, 48 Vt. 322 ; *Martin* v. *Thresher*, 40 Vt. 460.

The contract had a definite legal meaning, and what the parties said, or what Mrs. Gibson said about coming back, is immaterial. The same remarks apply to the conversation with Kelley. 1 Pars. on Cont. 76 ; 1 Chit. on Cont. 426.

*Ormsbee & Briggs*, for defendant.

1. The suit is based upon the order ; but the order is not admissible under the declaration ; for it is payable, if at all, to Mrs. J. P. Gibson, wife of the plaintiff. 2. Plaintiff should have declared specially. 3. The pans were sold " on trial ;" the bargain then was not an absolute one. 4. The evidence offered by the plaintiff, and excluded by the referee, was not material to the issue ; because the referee has found certain facts, absolutely conclusive, against the plaintiff's recovery, and the excluded evidence had no bearing upon said facts whatever.

The opinion of the court was delivered by

TAFT, J. This is an action of *indebitatus* assumpsit to recover the price of one set of " Gilt Edge " milk pans. The contract, made with the wife of the plaintiff, acting as her husband's agent, was in writing, in the following words, viz. :

MOUNT HOLLY, Vt., May 31st, 1878.
*Mrs. J. P. Gibson:*

You will please send me on the 20th day of June next, one set of GILT-EDGE MILK PANS, for 30 cows, (capacity 60 U. S. Gallons,) for which I agree to pay you as follows : $120, one hundred and twenty dollars, these pans are set on thirty days trial, warranted to make more and better butter with proper care and save more than ½ the labor over the small pan system. The above sum includes all the fixtures except WATER TANK, delivered on the cars at Rutland, Vermont.

(Signed)                                MRS. P. P. VAIL.

I. By the terms of the contract the property was delivered on thirty days trial, and if the result had been satisfactory the sale would have become absolute, and the defendant liable to pay the stipulated price. Under these facts we see no reason why, in connection with the other facts in the case, the written contract was not properly admitted in evidence.

II. It is evident from the report of the referee that the pans in question were made for use in connection with a platform, partitions and frames, should have been set up in a suitable room, and used with ice and running water, so that the milk could have been kept at a low temperature. The plaintiff, by his agents, selected the place for their location, assisted in the erection of the platform and appurtenances, and in setting them up, and gave full directions as to their use and operation. The room in which the pans were placed, was a woodshed, in a dirty condition, roughly boarded, and fully exposed to the heat of the sun. The defendant had no ice, and no running water. All these facts were well known to the plaintiff's agents ; and they must have known from the beginning, that the trial would result in a disastrous failure, in much less time than that specified in the contract; such was the result as the referee expressly finds. The duty was then cast upon the defendant, of notifying the plaintiff, within a reasonable time, of the failure of the trial, that he might retake his property, unless the facts reported excuse her from that obligation. In respect to this, the referee finds that when Mrs. Gibson was applied to by the defendant, as to how the defendant should notify her of the result, she replied that she would come and see for herself ;

Gibson *v.* Vail.

and further finds, that the defendant was justified in understanding that Mrs. Gibson would so come. She failed to do so ; and the notice was not given until two months afterwards, when the plaintiff's agent, Kelly, who was engaged in the business of selling pans with Mrs. Gibson, was informed of the result, and requested to take them away. We think the defendant was under no liability to give notice of the result to the plaintiff, unless applied to for that purpose. The property having been purchased on trial, and under the facts disclosed in the referee's report, we think the trial was at the risk of the plaintiff. The trial ending in failure, and the defendant having performed all the obligations imposed by law upon her in the matter, we are of opinion that the sale of the pans did not become complete, and no recovery can be had for them.

III.   A question is made by the plaintiff upon the admission of evidence of conversations between the parties at the time the order was given. Nothing appears in the report as to what such conversations were, or that they related in any way to a qualification or change in the terms of the written contract, by any contemporaneous parol agreement, and as no presumption of this kind can be drawn we do not find any error in this respect. We think that the evidence referred to in the plaintiff's objection, as to the location and setting up of the pans, and of the conversations of the parties, at the several times mentioned, so far as they appear, was properly admitted for the purpose of determining whether the defendant did all that was required of her, by the terms of the contract.

IV.   We think the plaintiff by his conduct, and the part he took in the transaction, assumed the risk of the failure of the trial and is chargeable with the result. It was a species of fraud to palm off upon the defendant the article in question, when the plaintiff by his agents knew, or ought to have known, that it could not have been successfully used. It is fair to infer from the conduct of Mrs. Gibson that she did not intend to return and ascertain the result of the trial. That the trial could have resulted in nothing

31

· but failure, is very evident from the facts reported, and holding as we do that the plaintiff is chargeable with the result, the evidence that was offered by the plaintiff became immaterial, and we think the referee was correct in rejecting it.

Judgment of the County Court affirmed.