BATES TRACTOR CO. *v.* GREGORY.

Sales—Warranties not Included in Written Contract—Fraud. Representations in the nature of warranties antecedent to a contract of sale of a tractor cannot be urged as fraud where the contract is in writing and contains specific warranties.[1]

Error to Emmet; Shepherd, J. Submitted October 19, 1917. (Docket No. 78.) Decided December 27, 1917.

Assumpsit by the Bates Tractor Company against Amos Gregory and others on certain promissory notes.

[1] On the question as to whether express warranty as to quality excludes implied warranty as to quality, see note in 33 L. R. A. (N. S.) 501, specifically as to where express warranty is superadded for benefit of buyer, see page 512 of above note.

Judgment for defendants. Plaintiff brings error. Reversed.

*Cummins & Nichols,* for appellant.

*C. J. Pailthorp,* for appellees.

This action is brought to recover on two promissory notes, being part of the purchase price of one 25 horse power tractor, with one four-bottom gang plow equipment. The contract bears date April 25, 1914, is in writing, and contains the following warranty:

"*Working.*—This machine is warranted to do well the work for which it is intended, if properly operated by competent persons.

"If the purchaser does not notify the company to the contrary, by registered letter to the company, at its home office in Lansing, Michigan, within five days from first day's use, the machinery shall be considered as satisfying all warranties except as to materials.

"If any machine or attachment does not fulfill the warranty, the company shall furnish one which does, or refund its purchase price, and this shall be the limit of the company's liability.

"*Materials and Workmanship.*—This machinery is warranted to be well made of good materials, and if any part breaks within one year from delivery because of defect, the company shall furnish a duplicate part upon delivery to it of the broken part, and this shall be the limit of the company's liability for such defect.

"*Change in Warranty.*—This warranty cannot be changed except in writing by an officer of the company; no employee, mechanical expert, or selling agent can change any provision thereof or notice required, nor shall any action by the company or any agent taken to remedy any defect complained of be a waiver of the registered notice of dissatisfaction or complaint herein required.

"Secondhand goods, also machines specially built to order, are not warranted."

The purchase price named in the contract was $1,-950, payable as follows: $300, being the value of an

engine turned in by defendants to plaintiff on account; $395 paid in cash; $55 allowed as discount on account of cash payment; and the two notes in suit for $600 each, maturing December 1, 1914, and December 1, 1915. Separate suits were brought upon each note, but were consolidated and tried together. The tractor with equipment was delivered to defendants on May 18, 1914. One of the defendants testified that:

"The notes were delivered to the Pellston Bank some time several days after they were dated and signed by us. That was because they had agreed to hold these notes of mine until we could see fit for to release the same. They were not to be delivered until we saw fit to direct the bank to turn them over to the tractor company.

"The object we had was to see how the machine would test out. I could not tell the number of days the notes remained in the Bank at Pellston. I could not tell whether it was the latter part of May or early June. They were not delivered until after we had tested the machine and we directed the bank to turn over the note and the money which we had deposited there according to agreement."

Defendants undertook to operate the apparatus with ill success. On June 3, 1914, the following telegram was sent to plaintiff company:

"Brutus, June 3rd, 1914.
"BATES TRACTOR CO., Lansing, Mich.
   "Rig unsatisfactory—send man 8:30 tonight.
                              "ABRAHAM GREGORY."

Throughout the summer and fall of 1914 many efforts were made by defendants to secure satisfactory operation, but evidence on behalf of defendants tends to show that although between 75 and 100 acres were plowed, the machine never did good work. On November 5, 1914, defendants wrote the following letter to plaintiffs:

"BATES TRACTOR COMPANY.

"*Dear Sirs:* Find inclosed 65 cents for payment of screw top for Detroit oiler, which is the only article on your statement of the 28th which we feel responsible for; as the timber was found broken when first inspected after the arrival of the tractor. The stub for front axle also was defective, which was plainly visible after being broken. The exhaust valve stem must also be replaced, as the threads are stripped on both stem and burr from natural wear. The rollers and bushing are also badly worn from natural wear. I wish to state that we will not make any remittance until this matter is adjusted. I also wish to state that, although we find no direct fault with the plow, we wish to return it on part payment of first note, as it is yet not a profitable investment in this locality, due to the soft uneven ground and small fields. Perhaps you had better send a man to look the tractor over and make arrangements, for as stated before, we will not make any remittance on notes until this matter is fully adjusted."

On December 23d, after defendants had had possession of the apparatus for about seven months, a new agreement was entered into between the parties with reference to the payment of the first note, which was then past due. Referring to this agreement, defendant testified:

"Before he came up here and saw us I had asked them if they would not accept back the plows and wanted $250 indorsed on the notes if I returned the plows. That was along in November. Mr. Bates was up there in December, and we talked the matter over. The substance of our agreement was that we were to make a payment of $20, and did make a payment of $20, which was indorsed on the note, and that they were to allow $250 for those plows being returned, and we were to pay the note on the 1st of February following. We did not return the plows, but we did pay the $20. We did not pay the balance of the note in February.

"*Q.* And after that you offered to pay $100 on the note if they would postpone it for a while, did you not?

"*A.* I don't remember what date. I don't remember, but I probably have made the statement that we could not pay the note because the season had been a bad one, and we were financially unable to make the payments."

The balance of the note not having been paid in February according to this agreement, the plows were not returned, nor credit given therefor by plaintiff, and suit upon the note was thereafter started. Defendants continued to use the engine thereafter for the purpose of furnishing power to fill silos, grind feed, and thresh. Upon the trial, over the objection of plaintiff, defendants were permitted to introduce several letters and circulars written or issued by the plaintiff prior to the execution of the contract. These letters and circulars contained representations in the nature of warranties as to the character of the tractor and the work it would accomplish under specified conditions. Many of the alleged warranties contained in the circulars and letters are omitted from the written contract, and defendants were permitted to testify over objection that they would not have entered into the contract, but for the fact that they believed the representations contained in the circulars and letters. The case was tried by the court without a jury, and although, as he recites in his opinion, the record is barren of evidence as to defendants' damages, he finds that the plaintiff was guilty of fraud and assesses defendants' damages on account thereof exactly in the sum of the two notes sued upon with interest, and entered a judgment in favor of defendants for costs.

BROOKE, J. (*after stating the facts*). Defendants gave notice under their plea of the general issue that they would show in defense that they had been induced to sign the notes in question by false and fraudulent representations of the plaintiff, and that by reason of said fraud they had been greatly injured and dam-

aged, which they claimed the right by way of recoupment to set off against the demand of the plaintiff and have the balance certified in their favor. In opening the case counsel for defendants said:

"Now, our defense is not for a breach of warranty or guaranty, but it is that we were induced to enter into a contract of which these notes are a part through a false and fraudulent representation of the plaintiff which we relied upon and which induced us to enter into the contract."

Defendants rely in support of their contention for an affirmance of the judgment upon the case of *Phelps* v. *Whitaker*, 37 Mich. 72, and *J. B. Millet Co.* v. *Andrews*, 175 Mich. 350 (141 N. W. 578), and cases there cited.

Plaintiff insists that the case is governed by the recent cases of *Detroit Ship Building Co.* v. *Comstock*, 144 Mich. 516 (108 N. W. 286); *Witteman Co.* v. *Brewing Co.*, 183 Mich. 227 (150 N. W. 109); *Linderman Machine Co.* v. *Shaw-Walker Co.*, 187 Mich. 28 (153 N. W. 34); and *John D. Gruber Co.* v. *Smith*, 195 Mich. 336 (162 N. W. 124). We are of opinion that the contention of plaintiff must prevail. In principle the case at bar cannot be distinguished from the four cases last above cited. In those cases we have held that, where the parties to a contract reduce it to writing and agree as to what warranties said written contract shall contain, other warranties growing out of antecedent representations may not be imposed upon the vendor. An examination of the contract in the case of *Phelps* v. *Whitaker, supra,* relied upon by defendants, discloses the fact that the contract itself was absolutely silent as to any warranties, and this is likewise true of the contract considered by this court in *J. B. Millet Co.* v. *Andrews, supra.* Representations in the nature of warranties antecedent to the contract cannot be urged as fraud in cases where the contract is in writing, and contains specific warranties. The evidence introduced upon the part of the defendants

should have been rejected, and a judgment should have been entered for the plaintiff for the amount of the two notes.

Judgment reversed, with costs, and new trial granted.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred.