MISHLER *v*. INTERNATIONAL HARVESTER CO. OF AMERICA.

EVIDENCE—CONTRACTS—PAROL EVIDENCE—WARRANTY—FRAUD.
   In an action to recover damages for alleged fraud in the sale of a gasoline engine to plaintiff, parol evidence of conversations between plaintiff and the agent of defendant prior to and at the time the order was signed is inadmissible to vary the terms of a written contract of sale containing a warranty limiting the seller's liability to return of the purchase price in case the engine proved defective, and defendant was properly notified and given opportunity to put in good order.[1]

[1] As to right to show parol warranty in connection with a contract of sale of personalty, see note in 19 L. R. A. (N. S.) 1183.

Error to Kent; Perkins, J. Submitted June 21, 1915. (Docket No. 81.) Decided September 28, 1915.

Assumpsit by John Mishler against the International Harvester Company of America for damages for alleged false and fraudulent representations in the sale of an engine. Judgment for defendant. Plaintiff brings error. Affirmed.

*C. G. Turner* (*E. A. Maher,* of counsel), for appellant.

*Hatch, McAllister & Raymond* (*Cummins, Nichols & Rhoads,* of counsel), for appellee.

MOORE, J. This suit was commenced by declaration in June, 1914, for damages growing out of the sale of a gasoline engine. The plaintiff is engaged in the business of threshing grain, husking corn, and running a saw. He first saw the engine which is the subject of controversy at the Western Michigan State Fair. He finally bought the engine, trading an old steam engine he had as part payment. After the engine was delivered to him in the fall of 1912, some trouble developed; but he continued to use it at intervals until the latter part of March, 1914.

Upon the trial he was allowed to testify orally to the conversations between him and the selling agent prior to and at the time of the purchase. In the course of his examination it developed that the contract of purchase was in writing, which writing was produced in court and identified by the plaintiff. It was then read in evidence, and upon motion of the defendant the oral testimony in relation to the bargain was stricken out. The contract is as follows:

"ORDER FOR GAS AND GASOLINE ENGINE.
"To Babbit, Rugler & Co., Town Freeport, State Mich.:
"The undersigned, of R. R. No. 55 Twp., Bowne

P. O., County Kent, State Mich., hereby orders, subject to your approval and to all conditions of agreement and warranty printed on back of this order and made a part thereof, to be shipped on or about the —— day of at once, 191——, to Babbit, Rugler & Co. at Freeport.

"*Engine.* One 45 H. P. International tractor No. 5855 gas or gasoline engine (28 size of pulley), complete, including necessary fixtures, at price of $——, 140 ft. 7 in. 4-ply. Belting endless.

"*Attachments.* One each of the following, at the following prices:

"In consideration whereof the undersigned will receive same on arrival, will pay freight and charges thereon from Chicago, Ill., and upon delivery or tender thereof will pay to your order:

"$2,600.00 cash and executive approved notes payable to your order as follows: $700.00 due cash on delivery 1st. $550.00 due Dec. 1st, 1913. $550.00 due Dec. 1st, 1914. $800.00 due 1-16 H. tractor, 1st, 191——. Said notes to draw interest at the rate of 6 per cent. per annum from date July 1, 1913, until maturity, and 7 per cent. per annum from maturity until paid.

"It is expressly agreed that this order shall not be countermanded, and that the title to said property shall remain vested in you and your assigns, until the entire purchase price has been paid in money.

"It is expressly agreed that the property herein ordered shall be and remain personal property in whatsoever manner it may be annexed to realty.

"The undersigned hereby acknowledge having received a true copy of this order. Agreement and warranty as indorsed on the back hereof.

"*Security.* Rives steam engine and water tank.

"*Order.* Dated the 4th day of Nov., 1912.

"Purchaser lives 2 miles east, 5 miles south, of said post office.

"Approved at —— by ——.

"Taken by Walker & B. R. & Co.

"JOHN MISHLER."

Upon the back of it appeared the following:

"WARRANTY AND AGREEMENT.

"International Harvester Company of America (Incorporated) warrants the within described engine to

do good work, to be well made of good materials, and durable if used with proper care. If upon one day's trial, with proper care, the engine fails to work well, the purchaser shall immediately give written notice to International Harvester Company of America, at Chicago, Illinois, and to the dealer from whom it was received, stating wherein the engine fails, shall allow a reasonable time for a competent man to be sent to put it in good order, and render necessary and friendly assistance to operate it. If the engine cannot then be made to work well, the purchaser shall immediately return it to said dealer, and the price paid shall be refunded, which shall constitute a settlement in full of the transaction.

"Use of the engine after three days, or failure to give written notice to said company and said dealer, or failure to return the engine as above specified, shall operate as an acceptance of it and a fulfillment of this warranty. No agent has power to change the contract of warranty in any respect.

"This express warranty excludes all implied warranties, and said company and said dealer shall in no event be liable for breach of warranty in an amount exceeding the purchase price of the engine. If within 90 days' time any part proves defective, a new part will be furnished on receipt of part showing defect."

After the motion to strike out was granted, counsel for plaintiff said, "Under the circumstances we have no further testimony," and the trial judge directed a verdict for the defendant. The case is brought here by writ of error.

The pivotal question in the case is whether the written contract should control. Counsel for appellant insist that the oral testimony was competent, and the case should have been submitted to the jury, citing in support of this contention *Phelps* v. *Whitaker*, 37 Mich. 72; *Peck* v. *Jenison*, 99 Mich. 326 (58 N. W. 312); *Lyon* v. *Lindblad*, 145 Mich. 588 (108 N. W. 969); and *J. B. Millet Co.* v. *Andrews*, 175 Mich. 350 (141 N. W. 578). A reading of those cases will show them distinguishable from the instant case in the particular

that the contracts in those cases originated in fraud. The case now before us is more like *Seitz* v. *Machine Co.*, 141 U. S. 510 (12 Sup. Ct. 46) ; *McCray Refrigerator, etc., Co.* v. *Woods*, 99 Mich. 269 (58 N. W. 320, 41 Am. St. Rep. 599) ; *Detroit Shipbuilding Co.* v. *Comstock*, 144 Mich. 516 (108 N. W. 286) ; and the recent case of *Witteman Co.* v. *Malting & Brewing Co.*, 183 Mich. 227 (150 N. W. 109). We think these cases are controlling.

The judgment is affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.

The late Justice McALVAY took no part in this decision.