J. B. COLT CO. *v.* READE.

1. SALES—WRITTEN WARRANTY—ANTECEDENT REPRESENTATIONS NOT ADMISSIBLE AS WARRANTIES.

Representations in the nature of warranties antecedent to the contract may not be urged as fraud in cases where the contract is in writing and contains specific warranties.

2. SAME—FRAUDULENT REPRESENTATIONS INDUCING SALE MAY BE RELIED UPON.

Representations made by a selling agent as to facts which induce the purchaser to enter into a contract may, if false, be relied upon to avoid the contract, there being a marked distinction between such representations and warranties expressly or impliedly embodied in the contract.

3. SAME—FRAUDULENT REPRESENTATIONS.

False representations by the selling agent of a carbide lighting plant that it could be safely installed in the basement of the purchaser's home, although it would be within 15 feet of the furnace, which the agent knew was dangerous and of which fact the purchaser was ignorant, may be relied upon to defeat an action for the purchase price of the plant which the buyer refused to accept; said representations not being warranties within the meaning of 3 Comp. Laws 1915, §§ 11843, 11844.

4. SAME—DEFENSE OF FRAUD NOT PRECLUDED BY RECITATION IN CONTRACT.

Nor was said defense precluded by the fact that the contract recited that "no agent or representative of the company has made any statements or agreements, verbal or written, modifying or adding to the terms and conditions herein set forth."

5. SAME—EVIDENCE OF FRAUD—SUFFICIENCY.

Evidence tending to show that the generator of the plant could not be safely installed in defendant's basement, *held*, admissible and sufficient to justify a verdict for defendant.

Error to Livingston; Collins (Joseph H.), J. Submitted October 10, 1922. (Docket No. 65.) Decided December 5, 1922.

Assumpsit by the J. B. Colt Company against Harry S. Reade for the purchase price of a carbide lighting system. Judgment for defendant. Plaintiff brings error. Affirmed.

*Don. W. Van Winkle,* for appellant.

*F. J. Shields* and *L. E. Howlett,* for appellee.

SHARPE, J. Plaintiff's agent procured from defendant an order for a carbide lighting system for his farm buildings. The order contains the usual warranty of material and workmanship. It further provided:

"It being understood that this instrument, upon such acceptance, covers all the agreements between the purchaser and the company and that no agent or representative of the company has made any statements or agreements, verbal or written, modifying or adding to the terms and conditions herein set forth."

The order was dated December 2, 1920, and was accepted by the plaintiff on December 10, 1920, and notice thereof communicated to defendant. On January 3, 1921, plaintiff shipped the apparatus to defendant. He refused to accept it, and plaintiff brings this suit to recover the price fixed in the contract, $354.35. The defendant was permitted to offer testimony tending to prove that at the time he gave the order he told plaintiff's agent that his basement was small and that it contained a furnace and that the agent said to him that he "could set it (the plant) right beside the furnace, that I could go around with a light of any kind, couldn't make it explode." He also offered proof that his brother, who had purchased a similar plant,

after its installation discovered a card hanging in the basement near the plant on which in part appeared the following:

"IMPORTANT NOTICE.
"DO NOT TAKE A LIGHT OR FIRE OF ANY KIND ABOUT THIS GENERATOR.
"Generator should not be placed nearer than fifteen feet to a furnace or stove.    *    *    *
"Tack this card up in a conspicuous place near your machine."

Mr. Watts, a neighbor, testified that he had purchased a similar plant from plaintiff and that included in the shipment was a card similar to that found by the brother.    Defendant also offered proof that it was impossible to place the generator included in his order in his basement without having it less than 15 feet from the furnace; that he refused to accept the shipment and notified the plaintiff of such action. Plaintiff's attorney objected to the introduction of this proof, moved to strike it out at the conclusion of the proofs, and also moved for a directed verdict, which objection and motions were overruled.    The court instructed the jury, in effect, that if the defendant had established the facts testified to as above indicated he would not be liable.    A verdict for defendant resulted.

1. There is a marked distinction between representations made by a selling agent as to facts which induce the purchaser to enter into a contract and warranties expressly or impliedly embodied in the contract.    A representation is thus defined:

"In the law of contracts in general, a statement, incidental to a contract, relative to some fact having reference thereto, and upon the faith of which the contract is entered into."    34 Cyc. p. 1619.

In our uniform sales act (3 Comp. Laws 1915, § 11843) an express warranty is defined as:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty."

Warranties that will be implied will be found in the section following. The rule is firmly established in this State that—

"Representations in the nature of warranties antecedent to the contract cannot be urged as fraud in cases where the contract is in writing, and contains specific warranties." *Bates Tractor Co.* v. *Gregory,* 199 Mich. 8; *Youngs* v. *Advance-Rumely Thresher Co.,* 215 Mich. 682.

The representation here relied on to establish fraud is not in the nature of a warranty. It was in no way related to the character, quality or title of the thing ordered or its efficiency or suitability to perform the service expected. In order to install the plant, defendant must have a place to put it. The natural place was the basement of his house, which was to be lighted by it. The assurance of plaintiff's agent that it could be safely installed therein was in no way a warranty within the statutory or generally accepted definition of that term. Whether it could be safely placed near the heating plant was a matter of which plaintiff's agent had full knowledge and defendant no information. To secure such information, defendant made inquiry of the agent. Had defendant been informed of the necessity of having a 15-foot space between the generator and the furnace, he might have and probably would have under the proofs declined to give the order by reason of the expense to which he would be put in the enlargement of his basement. If he was

induced to sign the order by a false statement in the nature of a representation, he would be justified in rescinding the contract. The understanding of the parties, expressed in the order, that it covered all agreements between the parties and that

"no agent or representative of the company has made any statements or agreements, verbal or written, modifying or adding to the terms and conditions herein set forth"

—did not preclude the defendant from relying on this defense. *Peck* v. *Jenison,* 99 Mich. 326; *J. B. Millet Co.* v. *Andrews,* 175 Mich. 350; *Mishler* v. *International Harvester Co.,* 188 Mich. 104.

2. We think the proof submitted tending to show that the generator could not be safely installed in defendant's basement was admissible and sufficient to justify the verdict. The plants purchased by defendant's brother and Mr. Watts were similar to that ordered by the defendant. The proofs show that Union carbide was to be used in the generator. The manner in which an accident may occur in its use is detailed in *Charron* v. *Union Carbide Co.,* 151 Mich. 687, wherein it is said:

"When water or considerable dampness comes in contact with the carbide it generates a dangerous gas, and when mixed with air, a spark would ignite it and cause a severe explosion."

That such danger was known to both defendant and plaintiff's agent is apparent, else no inquiry as to where the generator could be safely placed would have been made. The assurance was given that it could be so placed in close proximity to the furnace. Before the shipment to defendant arrived, he was informed that the notice which accompanied the shipment of the two similar plants contained the warnings that—

"Generator should not be placed nearer than fifteen feet to a furnace or stove. * * *

"An open light should not be permitted nearer than ten feet to the generator."

What would a prudent man do in view of the probable danger if he placed the generator within 15 feet of the furnace? If unable to install the plant as others who had purchased similar plants were warned they must do, we think he was justified in rescinding the contract and refusing to accept the shipment.

The issues were fairly submitted to the jury. We find no reversible error in the record.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.