DELTA ASBESTOS CO., INC., *v.* SANDERS.

1. PARTNERSHIP—SCOPE OF PARTNERSHIP—AUTHORITY OF PARTNER
   TO BIND COPARTNER—STATUTES.
   Managing partner may not depart from scope of partnership
   without authorization and bind his copartner by wholly foreign
   contract (2 Comp. Laws 1929, § 9849).

2. SAME—AUTHORIZATION—RATIFICATION.
   Purchase order for roof preservative by managing partner of
   storage and transfer business was so apparently outside scope
   of partnership's business as not to be binding on copartner, in
   absence of authorization or ratification (2 Comp. Laws 1929,
   § 9849).

3. FRAUD—CONTRACTS.
   Fraudulent representations inducing contract will void it.

4. EVIDENCE—FRAUD—WRITTEN CONTRACT.
   In action on written contract, evidence of fraudulent representa-
   tions as to existing facts by plaintiff's agent, inducing execu-
   tion of contract, was admissible, over plaintiff's objection that
   it tended to vary terms of contract.

5. APPEAL AND ERROR—MOTION FOR NEW TRIAL—WEIGHT OF EVI-
   DENCE.
   In absence of motion for new trial, Supreme Court declines to
   weigh evidence.

Appeal from Kent; Perkins (Willis B.), J. Sub-
mitted April 13, 1932. (Docket No. 95, Calendar
No. 36,194.) Decided June 6, 1932.

Assumpsit by Delta Asbestos Company, Inc., a
foreign corporation, against Dora H. Sanders and
Harry R. Wells, each individually and as doing busi-
ness as Security Storage & Transfer Company, to
recover the contract price for a quantity of roofing

material. Judgment for defendants. Plaintiff appeals. Affirmed.

*Dunham, Taylor & Allaben,* for plaintiff.

*McAllister & McAllister,* for defendants.

WIEST, J. Defendants Wells and Sanders are brother and sister and conducted a storage and trucking business under the name of Security Storage & Transfer Company, with Wells as active and managing partner. Wells, in the name of the company, signed an order for a liquid roof preservative, sold by plaintiff, and the product was billed to and received by the company. This suit was brought to recover the contract price of the product, was tried without a jury, and defendants had judgment.

The court found the matter was outside the scope of the company, and defendant Sanders, not having authorized or ratified the transaction, was not liable, and defendant Wells was induced to sign the contract by false and fraudulent representations, and was not liable. The name "Security Storage & Transfer Company" plainly indicated the scope of the business carried on. Storage in a warehouse and carriage by trucks was, and for many years had been, the sole business of the company. Defendant Wells could not depart from the scope of the partnership without authorization and bind his copartner by a wholly foreign contract. Uniform partnership act, 2 Comp. Laws 1929, § 9849; *McIntosh* v. *Detroit Savings Bank,* 247 Mich. 10.

It must have been manifest to plaintiff's agent that the purchase was not one, apparently, for carrying on the business of the partnership in the usual way, unless it was to make deliveries of orders procured by plaintiff.

We find no assent by defendant Sanders, no acts of ratification by her, and no evidence justifying application of the doctrine of estoppel. As soon as defendant Sanders discovered the transaction she repudiated it and refused to be bound thereby, and so notified plaintiff.

The court found that plaintiff's agent:

"fraudulently represented and stated to the defendant (Wells) that the said Delta Asbestos Company, Incorporated, has been a company carrying on and conducting a large business in the sale of roofing material throughout the United States, that it was especially interested and desirous of establishing an agency in Grand Rapids for the sale of its material, and that it had many requests and orders from a large number of purchasers and prospective purchasers in and around Grand Rapids, and that it desired to have the defendant (Wells) act as its agent in Grand Rapids, Michigan, to purchase same (some) stock, and fill all of said orders, and stated and represented to him that if he did purchase said material from said plaintiff, it would immediately turn over to him all of the orders which it had on hand, which would be enough to cover the material purchased, and that all that he would have to do was to fill said orders of said purchasers, and collect the money and receive the profits between the purchase price, and the sale, and that it would forward to the said defendant all of said orders which it had on hand from prospective purchasers of said material, and that the same was sufficient to take up all the material which it proposed to sell to defendant under said contract. It appears from the evidence in this case that all of these representations were made by the said plaintiff to the said defendant, Harry Wells, and that he relied upon the same in making the said contract and purchasing said material and that all of said statements which were made by said plaintiff's representative to induce

him to purchase said material were false, and that said plaintiff did not have any orders on hand from prospective purchasers, and never did forward to the said defendant any orders covering the purchase of said material, and there was no demand for said material in and around Grand Rapids as repre- sented, and that upon discovering said false and fraudulent statements, he, the said Harry R. Wells, notified the agents and representatives of the said plaintiff, of this fraud and misrepresentation, and then and there repudiated and rescinded said con- tract, and tendered back to said plaintiff said ma- terial which it refused to accept.

"I, therefore, find that under the evidence in this case the said plaintiff cannot recover from the said defendant, Harry Wells, on account of its said false and fraudulent representations so made to him to induce him to purchase said material, and I, there- fore, find that he is not liable on said contract."

Plaintiff contends that evidence of fraudulent representations was inadmissible because it tended to vary the terms of the contract.

We said in *Plate* v. *Detroit Fidelity & Surety Co.,* 229 Mich. 482:

"It is elementary that fraudulent representations inducing a contract will void it. Plaintiff does not seek to vary the terms of the contract, but claims that the contract is void because she was induced to execute it by false and fraudulent representations made by Mr. Scott."

In that case the contract signed contained the pro- visions:

"This subscription is not subject to countermand and no conditions, agreements or representations either written or verbal, other than those printed herein, shall be binding on said company. * * *

This subscription contains the entire contract between the subscriber and the company."

Of this we said:

"It has long been settled that such provisions in a contract do not prevent showing the contract is void by reason of false and fraudulent representations in its procurement. *Peck* v. *Jenison,* 99 Mich. 326; *J. B. Millet Co.* v. *Andrews,* 175 Mich. 350; *J. B. Colt Co.* v. *Reade,* 221 Mich. 92."

The representations were inclusive of alleged existing facts. The circuit judge saw the witnesses and there is support for his findings.

It is urged that the judgment is against the clear weight of competent evidence. We find no motion for a new trial. We decline to weigh the evidence. The judgment is affirmed, with costs to defendants.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and BUTZEL, JJ., concurred.